UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LEAP ACQUISITIONS, LLC**, and **RYAN RICHARDSON,** Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.,

**CHRISTOPHER A. GRIVAS**, Individually; **THE FAIRVILLE PARTNERSHIP, L.P.**; **FVP LLC d/b/a ROAD DOG TRUCKS**; and **C.A.G. CORPORATION** d/b/a **CAG TRUCK CAPITAL,**

Defendants.

No.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

## CLASS ACTION COMPLAINT

Plaintiff Leap Acquisitions, LLC ("LEAP") and Ryan Richardson, bring this Class Action Complaint against Christopher A. Grivas (“Grivas”), The Fairville Partnership, L.P. ("Fairville"), FVP LLC d/b/a Road Dog Trucks ("Road Dog"), and C.A.G. Corporation d/b/a CAG Truck Capital (“CAG”) (collectively, the "Fairville Enterprise" or "Defendants"), and aver as follows:

## INTRODUCTION

1. The defendants in this case operate a business enterprise that is engaged in the installment sales of motor vehicles without a license from the

Pennsylvania Department of Banking and Securities as required by the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"), 12 Pa.C.S. § 6211.

2. As a result of operating without a license, the installment sale agreements defendants entered into with purchasers are unenforceable, except for the principal amount of credit extended to purchasers who remain in possession of their vehicles. 12 Pa.C.S. § 6236

3. Without a license, the defendants are not allowed to charge or collect interest, fees, or costs from purchasers, but they are charging and collecting these sums nevertheless. 12 Pa.C.S. § 6236.

4. The defendants represent on their website that they have sold over 70 vehicles in the recent past, meaning that there is a class of purchasers whom defendants have billed illegal interest, fees, and costs, and the purpose of this lawsuit is to recover that money.

5. The complaint also includes individual claims by the plaintiff for breach of warranty and fraud as a result of the defendants selling plaintiff a defective vehicle.

**THE PARTIES**

6. Plaintiff Leap Acquisitions, LLC ("LEAP"), a limited liability company with a place of business at 3913 Taylor Ln., Yukon OK 73099.

7. Plaintiff Ryan Richardson is an individual resident of Oklahoma and the sole owner and operator of Leap Acquisitions, LLC. On September 15, 2025, prior to the formation of Leap Acquisitions, LLC, Richardson entered into the

transaction with defendants as the promoter and equitable owner of the entity subsequently formed as Leap Acquisitions, LLC, on October 1, 2025. Richardson is personally liable on the contract under the promoter liability doctrine and has suffered injury to his business and property as a result of defendants' conduct.

8. Defendant Christopher A. Grivas is an adult individual who conducts business in Chester County, Pennsylvania.

(a). Grivas is the president and controlling principal of C.A.G. Corporation ("CAG") at 4 Hillman Drive, Suite 104, Chadds Ford PA 19317 (Exhibit P-1), which trades under the name CAG Truck Capital. Exhibit P-1 at 002.

(b). CAG Truck Capital is the managing partner in defendant Fairville Partnership, LP ("Fairville"), also located at 4 Hillman Drive, Suite 104 Chadds Ford, PA 19317. Exhibit P-2 at 005.

(c). Mr. Grivas is also the governor of FVP, LLC, which trades under the name Road Dog Trucks. Exhibit P-1 at 003-4.

(d). Mr. Grivas participates in the operation of all of these businesses by supervising and directing their activities, including but not limited to the practice of selling motor vehicles on credit they supply without a license from the Department of Banking and Securities and collecting illegal interest, fees, and costs.

9. Defendant Fairville Partnership, LP ("Fairville") is a limited partnership operating out of 4 Hillman Drive, Suite 104 Chadds Ford, PA 19317,

whose business includes financing the sale of trucks, including trucks it has repossessed. Exhibit P-2.

10. Defendant C.A.G. Corporation t/a CAG Truck Capital ("CAG") is the general partner of Fairville and also operates out of 4 Hillman Drive, Suite 104 Chadds Ford, PA 19317.

(a). CAG and Fairville share overlapping employees who all work out of the same office. Exhibit P-2 at 002 & Exhibit P-3 at 004-5.

(b). On its website, CAG represents that it lends its own money, meaning that it considers loans made by Fairville to be its own since it is the general partner of Fairville.

11. Defendant FVP, LLC., is a corporate entity trading under the name Road Dog Trucks ("Road Dog") that is governed by Christopher Grivas, and also operating out of 4 Hillman Drive, Suite 104 Chadds Ford, PA 19317. Exhibit P-1 at 003-4.

12. Road Dog describes itself as a company that remarkets repossessed trucks that it reconditions and offers for sale with "EZ financing." Exhibit P-4 at 001.

13. The financing comes from Fairville at the direction of CAG under the supervion and direction of Grivas.

14. Road Dog markets its trucks as "Approved by Mitch," who is represented to be a diesel mechanic, Mitch Sentman, responsible for reconditioning the vehicles. Exhibit P-4 at 008-9.

15. Mr. Sentman is also listed as being on the payroll of CAG. Exhibit P-3 at 007-8.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

17. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside in this District and a substantial part of the events giving rise to the claims occurred here.

18. Further, the Security Agreement attached as Exhibit P-8 contains a forum selection clause in which the parties submit to the jurisdiction of the Eastern District of Pennsylvania.

19. Leap Acquisitions, LLC was organized on or about October 1, 2025, and has ratified all acts taken by Ryan Richardson on its behalf prior to formation. In the alternative, Richardson brings this action individually as the promoter and equitable owner of the claims arising from the September 15, 2025, transaction.

## FACTUAL ALLEGATIONS

20. Fairville started out as a loan company that financed the purchase of trucks between third parties by making direct loans to purchasers. Exhibit P-5 at 002.

21. Fairville was not affiliated with any motor vehicle dealers and did not sell trucks itself.

22. In 2005, Fairville sought guidance from the Pennsylvania Department of Banking and Securities ("DOBS") on whether it needed to be licensed under the Motor Vehicles Sales Finance Act ("MVSFA"), 12 Pa.C.S. 1201 *et seq.* (previously 69 P.S. 601 *et seq*.). Exhibit P-5 at 002.

23. Fairville represented to DOBS that it did not sell motor vehicles itself and had no affiliation or involvement with any businesses that sold motor vehicles. Exhibit P-5 at 002. Instead, Fairville represented to DOBS that its role was solely to provide loans directly to purchasers to pay dealers in full at closing. *Id.*

24. Based on this description of its business, DOBS told Fairville that it was not required to be licensed under the MVSFA. Exhibit P-5 at 004.

25. As time went on, Fairville's business changed. Fairville started selling repossessed vehicles on credit that Fairville provided itself.

26. These transactions qualify as installment sales under the MVSFA, 12 Pa.C.S. § 6202, which requires Fairville to have a license to be an installment seller of motor vehicles.

27. Nevertheless, Fairville never sought a license to be an installment seller under the MVSFA.

28. Grivas knew or should have known that Fairville, CAG, and Road Dog needed a license to operate a business that financed the sale of its own vehicles, but Grivas never obtained a license.

29. Grivas continued operating Fairville, CAG, and Road Dog as if they did not need a license, ignoring a myriad of requirements outlined in the MVSFA for the operation of an installment seller.

30. During or about the year 2020, Fairville formed Road Dog as a corporate entity to market repossessed motor vehicles, advertising that the vehicles were reconditioned and available on easy credit terms. Exhibit P-1 at 003-004 & P-4.

31. Road Dog says that it is not a dealer, but a company that markets repossessed vehicles. Exhibit P-4.

32. On its website, Road Dog offers trucks for sale with a comprehensive express warranty guaranteeing that its trucks have been fully reconditioned from top to bottom:

> **Road Dog Featured Sold Trucks**
>
> These trucks are just a few examples of the featured Reconditioned Trucks sold through the exclusive **Road Dog Layaway Plan**. Our reconditioning process involves a deep checklist covering everything from brakes to cab mounts to powertrain and everything in between. While it is going through our approved reconditioning process, it is also eligible for custom preference item upgrades to enhance driver comfort and appearance. This truck will not just meet DOT compliance but will run like a bear providing needed uptime reliability and peace of mind. Mitch, our certified master diesel technician, with over 40 years of diesel truck mechanical experience, misses nothing making sure no corners are cut and it is done right. These trucks will be Mitch Approved Trucks.

Exhibit P-4 at 010.

33. Under this warranty, every component of the truck is reconditioned "***from the brakes to cab mounts to powertrain and everything in between***. … This truck will not just meet DOT compliance but will … ***provid[e] needed uptime reliability*** and peace of mind.... Mitch, our certified master diesel technician, with over 40 years of diesel truck mechanical experience, ***misses nothing, making sure***

***no corners are cut and it is done right***. These trucks will be ***Mitch Approved Trucks.***" Exhibit P-4 at 010 (emphasis added).

34. At any given time, Road Dog advertises that it has multiple trucks for sale, all with easy financing to buyers regardless of their credit. Exhibit P-4 at 010-015.

35. Leap is a small company that operates a single truck operated by Ryan Richardson and several family members.

36. In 2025, Mr. Richardson was looking to purchase a used truck and came upon the Road Dog website. Exhibit P-4.

37. Richardson and his family became interested in a 2006 Peterbuilt 379 represented to have 158,000 miles on an overhauled engine, VIN 1XP5DB9X56D854357 (the "Vehicle"). Exhibit P-6.

38. The Vehicle was represented to have been substantially reconditioned and "approved by Mitch." Exhibit P-6.

39. Leap relied on the representations on the Road Dog website that the vehicle was reconditioned and would run reliably.

40. The vehicle was offered for sale for $140,569.00 and available with financing following a $30,000 down payment.

41. On September 15, 2025, Leap purchased the Vehicle, made the down payment, and executed financing documents.

42. The sale was documented by a bill of sale identifying The Fairville Partnership, L.P. as the seller (Exhibit P-7) and a note identifying Fairville as the lender. Exhibit P-8.

43. Richardson signed a guarantee that made him personally liable on the installment sale transaction to Fairville. Exhibit P-8.

44. Richardson signed the guarantee in reliance on Fairville's representations about the rehabilitation of the Vehicle.

45. The note provided for payment of a balance of $110,569.00 in 60 monthly payments of $2,784.34.

46. Over 60 months, the monthly payments total $167,060.40, yielding a finance charge of $56,491.40, equivalent to an annual percentage rate of 17.61%.

47. Every month Fairville transmits an invoice to Leap through the United States Post Office. Exhibit P-12.

48. The invoice itemizes the amount due into principal and interest. For example, for the month of September 2026, the invoice states that $1,342.82 is due for principal and $1,441.52 is due for interest. Exhibit P-12.

49. On information and belief, Fairville, at Mr. Grivas' direction, mails similar invoices to all of its buyers on a monthly basis.

50. Following the receipt of the invoice, Fairville relies on it to make a payment in the amount requested.

51. In the loan agreement, the parties stipulated that the transaction was consummated in Pennsylvania and governed by Pennsylvania law. Exhibit P-8 at 004.

52. Almost immediately after the purchase, the truck broke down, and the truck continued to break down every few weeks. Exhibit P-9.

53. Within weeks of purchase, the truck needed a new transmission, new differential, new heater, new shock absorbers, bearings, and wheel seals. Exhibit P-10.

54. The transmission failed within about a week of the purchase. Exhibit P-10.

55. Leap has spent over $20,000 on repairs. Exhibit P-10.

56. The truck failed to deliver uptime reliability.

57. Leap was unable to use the truck to operate its business and earn money on a consistent basis. Leap lost thousands of dollars of revenue.

**Class Allegations**

58. Leap seeks to represent a class defined as:

(a). Persons who purchased motor vehicles, including repossessed vehicles, from Fairville in transactions that would qualify as installment sales under the MVSFA from September 15, 2021, to the present.

59. The case meets the prerequisites for class certification under F.R.C.P. No. 23(a) because:

(a). There are too many class members to join in a single action. Road Dog claims on its website that they have sold 70 vehicles in the recent past. Exhibit P-10 at 010-014.

(b). There are questions of law and fact common to the class, including: (1) whether Fairville's credit sales constitute installment sale transactions under the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"), 12 Pa.C.S. § 6202, (2) whether as a result of selling motor vehicles by installment sale transactions without a license the loan agreements are unenforceable, especially as to interest, fees, and costs; (3) whether Grivas operated Fairville, CAG, and Road Dog through the collection of unlawful debt by collecting illegal interest or a pattern of racketeering activity by fraudulently billing buyers for illegal interest, fees, and costs; and (4) whether Fairville is liable for unjust enrichment to purchasers who were overcharged.

(c). Leap's claims are typical of the claims of proposed class members, and the defenses to the claims will be the same for all class members.

(i). Specifically, the liability of the defendants to class members turns on whether the defendants were installment sellers under the MVSFA without a license.

(d). Leap will fairly and adequately represent the interests of class members. Counsel will adequately represent the class; Leap does not have any conflicts of interest, and the case should not involve any expenses beyond the plaintiff's reach.

60. Class certification is appropriate under F.R.C.P. No. 23(b)(1) because adjudication of the enforceability of Leap's contract under the MVSFA will be dispositive of the interests of other class members.

61. Certification is appropriate under F.R.C.P. No. 23(b)(2) because the defendants have acted on grounds that apply to the entire class, *i.e.* operating without a license and demanding payment of illegal interest, fees, and costs from purchasers of motor vehicles.

62. Certification is appropriate under F.R.C.P. No. 23(b)(3) because common questions of law and fact predominate over questions affecting individual class members, including:

(a). Whether the defendants' lack of a license from the DOBS renders their installment sale contracts with buyers unenforceable. A class action is a superior means to adjudicate this issue because the liability of all the buyers and the defendants' potential damages turn on this question.

**Count I**

63. This count is by Leap and the class against Christopher Grivas under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) for operating an enterprise through (a) the collection of unlawful debt and/or (b) a pattern of racketeering activity. All the preceding paragraphs are incorporated by reference.

64. Mr. Grivas is a person within the meaning of 18 U.S.C. § 1961(3). He is an individual with the capacity to hold legal and beneficial interests in property.

**The Enterprise.**

65. Fairville, CAG, and Road Dog are each legal entities. Under *Cedric Kushner Promotions, Ltd. v. Don King*, 533 U.S. 158 (2001), each entity is legally distinct from Christopher Grivas. Plaintiffs' primary theory is that the three entities together constitute an association-in-fact enterprise. In the alternative, if the Court finds the association-in-fact insufficient, Fairville individually qualifies as the enterprise.

**Collection of Unlawful Debt.**

66. Mr. Grivas operates the Fairville Enterprise through the collection of unlawful debt.

67. Since Fairville is financing the sale of its own vehicles under contracts that require the payment of two or more installments, Fairville is an installment seller under the MVSFA. 12 Pa.C.S. § 6202.

68. As an installment seller, Fairville is required to have a license from DOBS. 12 Pa.C.S. § 6211.

69. Without a license, Fairville's loan agreements become unenforceable against the buyers. 12 Pa.C.S. § 6236(a).

70. Without a license, Fairville is prohibited from collecting funds from buyers, except for principal from buyers who have possession of their motor vehicles. 12 Pa.C.S. § 6236(a)&(b).

71. Fairville is specifically prohibited from collecting interest, yet Fairville has buyers execute installment sale agreements that assess interest against them, and Fairville collects that interest following the sale.

72. Fairville's agreement with Leap imposes interest at an annual percentage rate of 17.61%.

73. The interest Fairville is collecting constitutes unlawful debt under 18 U.S.C. § 1961(6) because:

(a). The MVSFA is a law regulating usury in motor vehicle installment sale transactions governed by Pennsylvania law, 12 Pa.C.S. § 6243;

(b). The MVSFA sets the maximum amount of interest an installment seller can charge based on the characteristics of the vehicle and the licensing status of the seller. 12 Pa.C.S. §§ 6236(a)&(b), & 6243.

(c). An installment seller who does not have a license is not allowed to charge any interest, 12 Pa.C.S. §§ 6236(a), so any interest Fairville charges is twice the legal rate it is allowed to charge.

(d). Fairville is in the business of lending at rates that are usurious under state law.

74. Mr. Grivas may be liable for operating the Fairville enterprise through the collection of unlawful debt based on the collection of a single usurious debt without a pattern of activity.

**Pattern of Racketeering Activity**

75. Grivas also operates the enterprise through a pattern of racketeering activity.

76. The predicates for the racketeering activity are a series of acts of mail fraud and wire fraud.

77. The fraudulent artifice underlying both predicates is Fairville's false representations to buyers of the amount of their legal liability on their installment sale transactions.

78. Fairville falsely represents to buyers the amount of their debt in the initial installment sale agreement by including a finance charge, fees, and costs in the debt that are unenforceable under the MVSFA.

79. Fairville represented to Leap that it had to pay a total of $167,060.40 to satisfy an advance in the amount of $110,569.00, a sum that included an illegal finance charge in the amount of $56,491.40.

80. Fairville used interstate communications facilities to solicit Leap's acceptance of the installment sale agreement, sending the contract and related documents to Mr. Richardson to sign over the internet using Docusign, an electronic service for signing documents over the internet.

81. On information and belief, Fairville uses Docusign to send fraudulent installment sale agreements to many of its buyers, with each instance constituting a separate act of wire fraud.

82. Following the sale, Fairville began sending monthly invoices to Leap through the United States mail, each falsely representing the amount Leap had to pay.

83. For instance, on or about August 17, 2026, Fairville sent invoice no. 28647 (Exhibit P-12) to Leap soliciting a payment of $2,784.34, which included illegal interest in the amount of $1,441.52. *Id.* This invoice falsely represented to Leap that it had to pay $1,441.52 in interest that it that it did not legally owe.

84. Leap relied on the false representations in the Fairville invoices to pay amounts in excess of its actual liability.

85. The Fairville Enterprise sent similar invoices through the mail to all of its installment buyers, each falsely representing the amount of the buyer's payment obligation and causing the buyers to pay amounts in excess of their legal liability.

86. Grivas knew or should have known that neither Fairville nor CAG had a license from DOBS authorizing the collection of interest on installment sale transactions, but he directed for Fairville to contract and bill for interest, and represent to buyers that the sums were legitimate legal obligations, even though the sums were false, inflated, and uncollectable.

87. Each time Fairville sends a monthly invoice to each installment buyer, Fairville commits separate acts of mail fraud.

88. So far, Fairville has sent one fraudulent loan agreement and 11 fraudulent invoices to Leap, all in furtherance of a scheme to extract the payment of

illegal interest from Leap. Each of these events presents a separate act of mail or wire fraud.

89. Leap uses the United States mail or interstate electronic communications facilities to send payments that include unlawful debt to Fairville via check or electronic transfer.

90. Fairville's use of the internet and the mail to defraud Leap and other purchasers into making multiple payments of illegal interest represents a pattern of racketeering activity.

91. Mr. Grivas is supervising and directing the activities of the Fairville Enterprise, and thus he is operating the enterprise (a) through the collection of unlawful debt and (b) a pattern of racketeering activity.

92. Leap has been damaged by Fairville. So far Leap has paid over $15,000 of unlawful debt and has executed a contract to pay up to $56,491.40 in unlawful debt.

WHEREFORE, Plaintiffs for themselves and the class request judgment in their favor and against Grivas for actual damages, treble damages, attorney fees, and costs, together with any other relief that is just and appropriate.

**Count II**

93. This count is by Leap and the class against Grivas, Fairville, CAG, and Road Dog for conspiracy to operate an enterprise through the collection of unlawful debt in violation of 18 U.S.C. § 1962(d). All the preceding paragraphs are incorporated by reference.

94. Each defendant—Grivas, Fairville, CAG, and Road Dog—has agreed, expressly or by implication, to conduct or participate in the conduct of the Fairville Enterprise through the collection of unlawful debt or a pattern of racketeering activity as described in Count I.

95. Each defendant agreed that multiple predicate acts of wire fraud and mail fraud, or the collection of unlawful debt, would be committed in furtherance of the conspiracy, and each defendant knew the essential nature of the scheme, and knew or should have known that the collection of interest on the installment sale of motor vehicles without a license was illegal.

96. The underlying violation of § 1962(c) satisfies the distinctness requirement because the "person," defendant Grivas, is a natural person legally distinct from the "enterprise," which is an association-in-fact of the corporate entities Grivas operates.

97. The corporate defendants (Fairville, CAG, and Road Dog) are liable as conspirators under § 1962(d) because, even as members of the enterprise, they are distinct juridical persons who knowingly agreed to facilitate Grivas's unlawful conduct of the enterprise's affairs through the commission of the predicate acts.

WHEREFORE, Plaintiffs for themselves and the class request judgment in their favor and against Grivas, Fairville, CAG, and Road Dog, jointly and severally, for actual damages, treble damages, attorney fees, and costs, together with any other relief that is just and appropriate.

## Count III

98. This count is by Leap and the class against Fairville, CAG, and Grivas for unjust enrichment. All the preceding paragraphs are incorporated by reference.

99. Fairville has been unjustly enriched by the receipt of payments under invalid and unenforceable installment sale contracts, including payments of interest, charges, fees, and costs on contracts in which buyers have kept or intend to keep their motor vehicles.

100. It is inequitable for Fairville to retain the benefit of payments it knew or should have known were illegal for it to assess and collect.

101. Fairville's operation of an unlicensed installment sale business is a serious violation of Pennsylvania law, carrying criminal penalties of up to $10,000 in fines and three years' imprisonment for the owners, officers, and other principals of the business. 12 Pa.C.S. § 6271.

102. Every buyer whose down payment and installments equal or exceed the principal amount of the loan, is entitled to the immediate release of Fairville's liens on their vehicles together with disgorgement of all sums Fairville has received beyond the principal amount of the loan. 12 Pa.C.S. § 6271(b).

103. Every buyer whose truck has been repossessed or who wants to return their truck is entitled to a refund of all the money they paid Fairville, the entirety of which represents an unlawful and illegal gain that is inequitable for Fairville to keep.

104. Fairville is liable under this count because it directly engaged in the operation of an installment sale business without a license.

105. Christopher Grivas is personally liable under this count for these sums as a result of 15 Pa.C.S. § 8644 and common law participation theory.

106. Mr. Grivas was in charge of the business and personally directed, approved, or ratified the operation of Fairville as an unlicensed installment seller.

107. CAG is liable for Fairville's actions as a result of its status as a general partner. 15 Pa.C.S. § 8644.

WHEREFORE, Leap for itself and the class asks for relief in its favor and against the Fairville, CAG, and Grivas, jointly and severally, as follows:

(a). For class members who have their trucks and wish to keep them, a judgment in the amount of all sums paid to and received by the defendants that were applied to any interest, costs, fees, and charges other than the principal amount of their loan;

(b). For class members who no longer have their trucks due to a repossession or wish to return them, a judgment for all sums paid to the defendants pursuant to the illegal contracts;

(c). A declaration that all sums due from any buyer are discharged, except for the principal amount of the debt for any buyer who wishes to keep their vehicle;

(d). An order requiring the defendants to release the liens on all vehicles where the owner has paid a sum equivalent to the principal due on their loan;

(e). Any other relief that is just and appropriate.

**Count IV**

108. This count is by Leap and the class against Fairville, CAG, and Grivas for money had and received. All the preceding paragraphs are incorporated by reference.

109. Defendants are liable for money had and received because they have received the payment of funds from Leap and the class to which they lacked a legal entitlement.

110. That money must be returned because defendants cannot in good conscience be allowed to keep funds they collected illegally by evading the requirements of the MVSFA, which they knew or should have known apply to the installment sale of motor vehicles.

WHEREFORE, plaintiffs for themselves and the class request a judgment in their favor against Fairville, CAG, and Grivas, jointly and severally, as follows:

(a). For class members who have their trucks and wish to keep them, a judgment in the amount of all sums paid to and received by the defendants that were applied to any interest, costs, fees, and charges other than the principal amount of their loans;

(b). For class members who no longer have their trucks due to a repossession, a judgment for all sums paid to the defendants purportedly for the purchase of their vehicles, and

(c). Any other relief that is just and appropriate.

**Count V**

111. This count is by Leap and Richardson individually against Fairville, CAG, FVP, LLC (Road Dog) and Grivas for breach of warranty. All the preceding paragraphs are incorporated by reference.

112. Road Dog made various affirmations of fact, promises, and descriptions regarding the Vehicle that became part of the basis of the bargain and formed express warranties pursuant to the Pennsylvania Commercial Code, 13 Pa.C.S. § 2313.

113. The express warranties alleged herein arose by operation of statute under 13 Pa.C.S. § 2313 and are part of the total legal obligation between the parties under 13 Pa.C.S. § 1201(12). They are not extrinsic agreements subject to the common law parol evidence rule, but statutory obligations incorporated into the contract under 13 Pa.C.S. § 2207(c).

114. These affirmations, claims, and descriptions include the following:

(a). Stating that the vehicle was reconditioned pursuant to a "deep checklist covering everything from brakes to cab mounts to powertrain and everything in between." Exhibit P-5 at 010.

(b). The truck will "meet DOT compliance . . . [and] provid[e] uptime reliability and peace of mind." Exhibit P-4 at 010.

(c). "Mitch, our certified master diesel technician, with over 40 years of diesel truck mechanical experience, misses nothing making sure no corners are cut and it is done right. These trucks will be Mitch Approved Trucks." Exhibit P-4 at 010.

(d). The Vehicle received upgrades and reconditioning under the direct supervision of Mitch Sentman, totaling $50,870.35. Exhibit P-6 at 002.

(e). "You can invest in the re-conditioning cost today or pay for them over time along with downtime!" Exhibit P-6 at 002.

(f). "Ray, an expert trucker over the years, has completed a 50 mile road test ensuring all aspects of the truck are operating to peak performance, completing the reconditioning process." Exhibit P-6 at 002.

115. None of the affirmations, claims, or promises were true. At the time of the sale of the Vehicle to Leap, the Vehicle had serious defective conditions that rendered the Vehicle incapable of providing reliable uptime or cost-effective performance.

116. Instead of purchasing a reliable reconditioned Vehicle that was productive and income-generating, Leap purchased an unreliable vehicle in need of frequent repairs.

117. Within a week of being purchased, the Vehicle needed a new transmission. Exhibit P-10.

118. Within a few more weeks, the Vehicle needed a new differential, a new heater, new shock absorbers, bearings, and wheel seals. Exhibit P-10.

119. The Vehicle has continued to break down and has generated tens of thousands of dollars in repair bills and downtime costing thousands in income.

120. Leap has been damaged by the expenditures for repairs as well as the loss of income from repeated downtime.

121. Fairville is liable because it sold the vehicle and committed all the actions described in this count.

122. Grivas is liable under this count because he controlled all the companies and personally participated in making and breaching the warranties by planning, approving, or ratifying Road Dog's representations about the Vehicle and then refusing to repair the Vehicle when it broke down. Exhibit P-5 at 001.

123. CAG is liable for Fairville violations as a result of its status as general partner. 15 Pa.C.S. § 8644.

WHEREFORE, plaintiffs request judgment in their favor against Fairville, CAG, Road Dog, and Grivas, jointly and severally, for damages or rescission as plaintiffs may elect, together with any other relief that is just and appropriate.

**Count VI**

124. This count is by Leap and Richardson individually against Fairville, CAG, FVP, LLC (Road Dog), and Grivas for fraud. All the preceding paragraphs are incorporated by reference.

125. The defendants' representations that the Vehicle had been reconditioned were false.

126. Defendants falsely represented that the Vehicle had been reconditioned pursuant to a "deep checklist covering everything from brakes to cab mounts to powertrain and everything in between." Exhibit P-010.

127. Defendants falsely represented that the Vehicle will provide "uptime reliability and peace of mind." Exhibit P-010.

128. Defendants falsely represented that the vehicle was approved by diesel mechanic Mitch Sentman who "misses nothing making sure no corners are cut."

129. The integration clause in the loan agreement covers only prior or contemporaneous *oral* agreements, so it does not bar consideration of Road Dog's written representations from the website as evidence of fraud in the inducement.

130. Fairville also engaged in fraud in the execution of the agreement by omitting material facts about the Vehicle condition, such as an accurate description of the Vehicle's lack of reconditioning and the death of Mitch Sentman.

131. In reality, Mitch Sentman passed away on April 11, 2024 (Exhibit P-11), so he was not around to recondition the Vehicle before it was purchased by Leap.

132. Defendants have continued to represent its vehicles are approved by Mitch for over two years following his death.

133. Defendants go out of their way to boast about the reconditioning of the vehicles they sell. Defendants intend for purchasers to rely on these representations.

134. Leap and Richardson relied on defendants' representations and omissions regarding the high quality of reconditioning the vehicle had undergone, believing they would purchase a vehicle upon which they could rely for consistent uptime and minimal repair expenses.

135. Defendants' representations ended up being false, and Leap has been damaged.

136. Leap purchased a vehicle that ended up being the opposite of the vehicle that was described. Instead of being a reliable vehicle on which they could count on for profitable uptime, they purchased a vehicle with frequent breakdowns.

137. Leap has had to spend thousands of dollars on repairs, and has lost thousands of dollars in work, all because the Vehicle turned out to be the opposite of what it was represented to be.

138. Despite all the defendants' grand representations, when LEAP complained about the Vehicle after the sale, defendants' response was to tell them "Fairville sold the vehicle as a principle to Leap 'as-is,' without any warranties of any kind" (Exhibit P-5), so there was nothing they could do about it.

139. Denying warranty coverage after boasting about the Vehicle undergoing a comprehensive reconditioning "covering everything from brakes to cab

mounts to powertrain and everything in between" (Exhibit P-010) is wanton and outrageous.

140. Defendants addressed all the fears a trucking company could have over the purchase of a used vehicle, assuring Mr. Richardson he had nothing to fear, because the truck would deliver "uptime reliability and peace of mind" (Exhibit P-010), and then denied every affirmation or promise it made regarding the vehicle.

141. Fairville is liable for the fraud as a result of being the seller of the Vehicle.

142. CAG is liable by virtue of its role as general partner. 15 Pa.C.S. § 8644.

143. FVP, LLC. (Road Dog) is liable as a result of remarketing the vehicle as an agent for Fairville.

144. Mr. Grivas is liable under participation theory as a result of orchestrating the false representations and ommissions.

145. The fair inference is that Mr. Grivas is directing the activities of these companies, including but not limited to the marketing, representations about the nature and quality of the equipment, and the refusal to repair defective vehicles.

WHEREFORE, plaintiffs request a judgment in their favor and against the defendants, jointly and severally, for rescission or damages, as plaintiffs may elect, including but not limited to the value of the Vehicle, the cost of repairs, the value of missed business, and punitive damages for intentionally

misrepresenting that the vehicle had been reconditioned and then denying their actions, together with any other relief that is just and appropriate.

Respectfully submitted,

____________________________

Robert F. Salvin
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com